# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LISA HENSLEY, | ) |
| | ) |
|     Plaintiff, | )     Case No. 3:14-cv-0138 |
| | )     Judge Trauger |
| v. | ) |
| | ) |
| RUTHERFORD COUNTY, TENNESSEE, | ) |
| d/b/a RUTHERFORD COUNTY JUVENILE | ) |
| DETENTION CENTER, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment filed by the defendant, Rutherford County, Tennessee (the "County") (Docket No. 16), to which the plaintiff has filed a Response in opposition (Docket No. 24). For the reasons stated herein, the defendant's Motion for Summary Judgment will be granted and the plaintiff's claims will be dismissed.

## BACKGROUND

The plaintiff, Lisa Hensley, filed this employment discrimination action against her employer, the Rutherford County Juvenile Detention Center (the "Center").[1] Since 2003, Hensley has worked as a Sergeant at the Center. In 2006, Hensley was diagnosed with multiple sclerosis ("MS"). Hensley's present title is "Administrative Sergeant," and her duties are limited to administrative functions.

---

[1] The facts are drawn from the Defendant's Statement of Undisputed Facts ("DSUF") and the plaintiff's responses thereto (Docket Nos. 18, 25), as well as the exhibits filed by the parties in support of their briefs (Docket No. 19, Exs. 1-4; Docket No. 24, Exs. 1-4).

1

Hensley filed this lawsuit on January 17, 2014, alleging that the County discriminated against her because of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Tennessee Disability Act, T.C.A. § 8-5-103 ("TDA")[2], and the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* ("THRA"); that the County retaliated against her in violation of Tennessee common law; and that the County's "intentional acts and omissions" constitute violations of the Family and Medical Leave Act, 29 U.S.C. § 2615 *et seq.* ("FMLA"). (Docket No. 1.)

## HOUSEKEEPING ISSUES

The County has moved for summary judgment on all claims, contending that (1) Hensley cannot establish the *prima facie* elements of her ADA, TDA, and FMLA claims, and (2) Hensley's common law retaliation and THRA claims are improper as a matter of law. Hensley's response to the motion is—put generously—difficult to follow. Moreover, some other submissions by the plaintiff, including her Complaint, are either procedurally defective or substantively incoherent, or both.

**I.  Conflation of ADA and FMLA Claims**

First, the plaintiff's Complaint and Response to the pending motion address her ADA (and TDA) and FMLA claims as if the statutes are subject to the same legal standards. They are not.

---

[2] The court notes that the plaintiff improperly asserted a claim under the Tennessee Handicap Act in her Complaint. The TDA was formerly known as the Tennessee Handicap Act. Effective April 7, 2008, the legislature amended the statute, changing all references to "handicap" within the Act to "disability," including changing the name. *See* 2008 Tenn. Pub. Acts, ch. 706, §§ 3, 5; *see also Bennett v. Nissan N.A., Inc.*, 315 S.W.3d 832, 841 n.6 (Tenn. Ct. App. 2009). The court has therefore construed the plaintiff's claim as a TDA claim.

For example, the plaintiff's Complaint alleges merely that "the intentional acts and omissions as described herein by the Defendant constitute violations of the Family Medical Leave Act." (Docket No. 1 ¶ 50.) The plaintiff neglects (in any submission to the court) to specify a theory of recovery under the FMLA (interference or retaliation) and, instead, merely argues that she must establish a "*prima facie* case of FMLA discrimination." (Docket No. 24 at 17.)[3] The court notes that another court in this district recently reprimanded another plaintiff (represented by the same counsel, Mr. Allman) for conflating the standards of the FMLA and ADA. *See Perry v. Am. Red Cross Blood Servs.*, No. 3:13-cv-1146, 2015 WL 1401058, at *1 (M.D. Tenn. Mar. 26, 2015) (Campbell, J.). As Judge Campbell explained,

> The FMLA does not deal with disability discrimination. A "serious health condition" under the FMLA is not the same as a "disability" for purposes of the ADA. The ADA, not the FMLA, requires an employer to accommodate an employee's 'disability' under appropriate circumstances. The FMLA, not the ADA, requires an employer to allow an employee leave of up to 12 weeks for a "serious health condition." The two Acts are not the same.

*Id.* Despite the plaintiff's misunderstanding of the statutes upon which she bases her claims, in the interest of justice and a timely resolution of the plaintiff's claims, the court will carefully consider her claims.

## II.     Procedural Defects with Respect to Plaintiff's Response to DSUF

Notwithstanding several admonitions from this court in other cases filed by Mr. Allman, he has continued to ignore the rules governing statements of fact that are required or permitted with respect to motions filed under Rule 56. *See, e.g.*, *Anderson v. McIntosh Constr., LLC*, No. 3:13-cv-0304, 2014 WL 2207924, at *2 (M.D. Tenn. May 28, 2014). First, in response to the

---

[3] The plaintiff's opposition brief, at least once, misidentifies the plaintiff herself. (Docket No. 24 at 17 ("To establish a *prima facie* case of FMLA discrimination, **Raney** must show . . . .") (emphasis added).)

DSUF, the plaintiff's submission appears to "dispute" facts without appropriate citation to the record[4] or without actually disputing the fact.[5] Having closely reviewed the record, the court concludes that the defendant's cited facts are not in dispute. The exercise of reviewing these facts, which are not actually in dispute, was a waste of the court's time and resources.

### III. The Plaintiff's THRA and Common Law Claims

The plaintiff does not address her THRA and common law retaliation claims in response to the defendant's Motion for Summary Judgment. Accordingly, the court considers those claims to be abandoned and will dismiss both claims. Nonetheless, even if the plaintiff had not abandoned her THRA and common law claims, both claims would be dismissed as groundless.

First, it is well settled that the THRA does not provide a remedy for discrimination on the basis of disability. *See Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) ("The [TDA] embodies the definitions and remedies provided by the [THRA]"); *Perlberg v. Brencor Asset Mgmt.*, 63 S.W.3d 390, 394 (Tenn. Ct. App. 2001) ("The [TDA] works in conjunction with the THRA to grant an individual a civil cause of action for wrongful discrimination based upon a handicap."). Second, the plaintiff's common law retaliation claim is improper because, under Tennessee law, a tort claim for retaliation requires that an employee

---

[4] (*See*, *e.g.*, Docket No. 25, ¶¶ 33, 34, 80.)

[5] For example, the defendant submits as an undisputed fact: "The roles and functions of the Swing Shift Sergeant, as compared to the other Sergeants, was different, because it performed administrative functions." The plaintiff responded: "Disputed. Along with administrative duties the swing shift position was responsible for completing staff lunches (relieving officers for their lunch), respond to emails, assisted the lieutenant with court appearances, and work visitation in the evenings. (Hensley Dep. pp. 38-39) It was not until 2013 that the title was changed to administrative sergeant to reflect the now primarily administrative duties. (*id.* at 45)." The plaintiff is not disputing the fact that was submitted by the defendant. She does not dispute that the Swing Shift Sergeant position was different because it performed administrative duties.

4

was discharged. Here, it is undisputed that the plaintiff remains at her job as a Sergeant and that no discharge has occurred. *See Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). Moreover, as the defendant argues, sovereign immunity applies to the plaintiff's common law claim against the County. *Id.* at 536 (noting that, unlike the common law, Tennessee's whistleblowing statute protects public employees and provides a remedy for retaliatory discharge).

## FACTUAL BACKGROUND

The court notes that the record is scant and disorganized with respect to the facts underlying the plaintiff's allegations. Nevertheless, the court has combed the record and closely reviewed the parties' briefs and, to the best of its ability, will summarize the relevant facts below.

**I.** **The Plaintiff's Employment, Generally**

Hensley began working at the Center part-time in 2000, when she was attending college. Hensley began work as a full-time officer at the Center in 2002, shortly after she graduated from college. Her responsibilities as an officer were "basic jailer duties." After two years, Hensley was promoted to "Lead Officer," and, in June 2003, Hensley was promoted to Supervisor. In 2005, the Center changed the titles for jobs within the Center. Hensley's new title became "Sergeant," which remains her title today.

Around 2008, the Center determined that there was a need for a Sergeant who would perform administrative functions. Around this same time, Hensley "transitioned into [a] Swing Shift Sergeant position." As Swing Shift Sergeant, Hensley voluntarily took on certain administrative responsibilities. Her title reflected her hours, which "split" the first and second

5

shift. At that time, the Center employed four Sergeants and one Swing Shift Sergeant. The roles were different because the Swing Shift Sergeant performed administrative functions.

## II. The Plaintiff's Health

According to the plaintiff's testimony at her deposition, she was diagnosed with MS in November 2006. At an unspecified point in time, the plaintiff began to receive intravenous infusions to treat her condition once every 28 days.

### A. The Defendant Grants the Plaintiff's Request for Accommodation for Friday Intravenous Infusions

During her time as Swing Shift Sergeant between 2008 and 2013, the plaintiff's hours were 11:00 a.m. to 7:00 p.m. The plaintiff originally worked Saturday through Wednesday and, at some unspecified time, began working Sunday through Thursday.

On May 30, 2012, Hensley was informed that her Sunday through Thursday schedule would be changed to Monday through Friday, effective June 18, 2012. (Docket No. 19, Ex. 2 at 32.) The plaintiff has alleged that, on June 5, 2012, she requested an accommodation for her infusions, which were regularly scheduled for Fridays. The plaintiff met with her supervisors, Captain Baskette and Lieutenant Victor, to discuss her request. The plaintiff specifically asked that the County permit her to work Monday through Friday on weeks that she did not have an infusion scheduled, but Sunday through Thursday on weeks where she needed an infusion. (*See* Docket No. 19, Ex. 2 at 53-54.) The plaintiff provided a physician's note explaining her medical need for the infusions. As a result of this request for accommodation, it is undisputed that the County altered the plaintiff's schedule to facilitate her requested schedule on June 14, 2012.

### B. Factual Allegations and Background with Respect to FMLA Claim

The record is puzzling with respect to the factual allegations underlying the plaintiff's FMLA claim. Upon careful review of the record, the plaintiff's FMLA claim appears to have evolved over the course of this litigation into a simple allegation that the defendant retaliated against the plaintiff after she filed an FMLA request. For this reason, the court will describe separately the plaintiff's allegations with respect to her FMLA claim, as they were set forth in the Complaint and in various submissions filed for purposes of the pending motion.

1. Allegations of the Complaint

In her Complaint, the plaintiff alleges that, around October 3, 2012, she met with Baskette regarding her FMLA paperwork. The Complaint contains no allegations with regard to why the plaintiff filed FMLA paperwork, or what the requested FMLA leave was intended to be used for (or whether it was ever used). The plaintiff alleges that, at the end of the October 3, 2012 meeting, the plaintiff "inquired if the FMLA paperwork that she [Plaintiff] submitted was sufficient." (Docket No. 1 ¶ 19.) The plaintiff further alleges that, "[w]hile reviewing the FMLA paperwork, Captain Baskette asked if Plaintiff had completed all of the documentation because half was in blue ink and the other half was in black ink. Plaintiff told Captain Baskette that the doctor's nurse filled out part of the form. Plaintiff was never instructed whether her FMLA paperwork was sufficient." (*Id.* ¶ 20.)

2. Scant Background with Respect to FMLA in the Record

The record contains little factual enhancement with respect to the allegations underlying the plaintiff's FMLA claim. Notably, the DSUF states as an undisputed fact, "The only allegation made by the Plaintiff related to her FMLA paperwork, [*sic*] was that when she turned in her intermittent leave request, Cpt. Baskette was alleged to have asked the Plaintiff if she completed part of the form herself because half the form was in blue ink and half was in black."

7

(Docket No. 25, ¶ 50.) In her responses to the DSUF, the plaintiff concedes that this statement is "undisputed." (*Id.*)

At her deposition, the plaintiff testified that Baskette instructed her that she was required to file FMLA paperwork at some unspecified time, even though the plaintiff was not taking FMLA leave. (Docket No. 24, Ex. 1 at 108-112.) The plaintiff further testified that, as described in her Complaint, Baskette "harmed" the plaintiff by insinuating (on the basis of the ink colors on the form) that the plaintiff had filled out her FMLA paperwork herself, rather than asking her doctor to fill out the form. (*Id.*) The plaintiff further testified that her FMLA paperwork was approved about one month after she conversed with Baskette about the paperwork.

The plaintiff did not submit any record of the FMLA paperwork to the court. Similarly, it appears that Baskette was not asked during her deposition about her interaction with Hensley related to the FMLA paperwork and ink colors.

### 3. The Plaintiff's Response to the Defendant's Motion for Summary Judgment

Despite the plaintiff's apparent earlier focus on her conversation with Baskette (and any allegedly hurtful insinuation that may have occurred), the plaintiff does not reference the October 3, 2012 meeting in the section of her brief related to her FMLA claim. Instead, the plaintiff argues that her supervisor, Director Lynn Duke, retaliated against her following her application for FMLA leave by assigning her to additional administrative duties and refusing to grant her a shift change.

**C. The Defendant Denies the Plaintiff's Shift Change Request**

On October 22, 2012, Duke sent an email to all of the sergeants working at the Center and advised them that a shift sergeant, Sergeant Conquest, was leaving his post. She wrote, "[a]s

8

such, promotions are in order." Director Duke's email further requested that each sergeant—the plaintiff and three others—submit a "first and second choice shift bid."

Hensley replied to the email and requested as her first choice a shift of Monday through Friday, "2nd shift"—the shift that belonged to the departing Sergeant Conquest. According to Director Duke's deposition testimony, the second shift sergeant works from 3:45 p.m. to 12:00 a.m. Hensley wrote that her second choice was to stay in her current role as "swing shift," Monday through Friday from 11:00 a.m. to 7:00 p.m.

Sometime following Hensley's reply to Duke's email, Hensley met with Duke to discuss her request to change shifts. Hensley and Duke signed "meeting notes," reflecting a summary of their conversation. The notes state:

> Director Lynn Duke sent an email to all Sergeants after a shift became available and asked the Sergeants to pick their top two shift preferences. Sergeant Lisa Hensley stated that her first choice would be working as the 2nd Shift Sergeant (3:45p – 12am, M-F) and her second choice would be to stay in her current position as the Swing Shift Sergeant (11a – 7p, M – F).
>
> Administration has concerns about moving Sergeant Hensley to a 2nd Shift Sergeant position. In Sergeant Hensley's current position as the Swing Shift Sergeant, she has agreed to accommodations (per Meeting Notes dated 6-14-12) which would not cause an undue hardship to this department. These same accommodations can not [*sic*] be made for any other RCJDC Sergeant position.
>
> Sergeant Hensley has also provided documentation from her medical doctor that clearly recommends that Lisa Hensley be on day shift and states that it is best for her to stay on her current work schedule of 11a – 7p or Lisa could experience increased complications relative to her medical condition. Additionally, Sergeant Hensley has voluntarily shared with Administration that she occasionally experiences memory lapses, limb numbness, and vision impairment.
>
> Based on this, Administration would have concerns for the safety and security of the detainees, fellow Officers and Sergeant Lisa Hensley herself were her schedule and responsibilities altered.
>
> In conclusion, it is not in the best interest of the department to change Sergeant Lisa Hensley's schedule from the flexibility/responsibilities she currently has as a

>   Swing Shift Sergeant because doing so would cause an undue hardship on this
>   department for the reasons listed above.

(Docket No. 19, Ex. 2 at 33.) Ultimately, none of the Sergeants received the Second Shift Sergeant position. Alternatively, a lower-ranked individual, a corporal, was promoted into the vacant role.

### III.    Administrative Sergeant Position

In 2013, the Swing Shift Sergeant position was eliminated and an "Administrative Sergeant" position was created in its place. Hensley was assigned to the Administrative Sergeant position. It is undisputed that (1) the plaintiff's title has not changed since she was promoted to Sergeant in 2005; (2) she has not been demoted, terminated, or suffered any reduction in pay; and (3) the plaintiff's salary increased between 2005 and the date that she filed this lawsuit. The parties further agree that the plaintiff has not lost any benefits or suffered any reduction in her benefits.

### IV.    The Plaintiff's Additional Complaints

The record further contains additional scattered complaints related to the plaintiff's dissatisfaction with her job, including her complaint that her boss, Lieutenant Victor, scheduled her to be "on-call" on holidays. The plaintiff also complains that, because she worked an unusual shift, she was not permitted to attend "a morning roll call," which took place several hours before she started work.

In her Response in opposition to the defendant's motion, however, the plaintiff identifies (1) the County's decision to deny her transfer to the Second Shift Sergeant position in October 2012 (and instead, to promote a lower-ranking sergeant) and (2) her assignment to administrative duties as "adverse actions" taken against her. For these reasons, the court has taken into account

the additional complaints made by the plaintiff, but considers them irrelevant to the plaintiff's ADA, TDA, and FMLA claims.

## ANALYSIS

### I. Rule 56 Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

### II. The *McDonnell Douglas* Analysis

Hensley's ADA, TDA, and FMLA claims are analyzed employing the familiar burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined by *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

The *McDonnell Douglas* framework is properly used where a plaintiff uses indirect or circumstantial evidence to demonstrate that an employer acted with a retaliatory or discriminatory motive. If the plaintiff makes a *prima facie* showing, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Clay v. United Parcel Serv.*, 501 F.3d 695, 704 (6th Cir. 2007). To meet this burden, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for its decision. *Id.*; *see also Berry v. City of Pontiac*, 269 F. App'x 545, 549 (6th Cir. 2008). If the defendant is successful, the burden then "shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). To make this showing, the plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that [the defendant] intentionally discriminated against [her]." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

### III.    Disability Discrimination Claim

In her Complaint, Hensley alleges that the County discriminated against her in violation of the ADA and the TDA by refusing to transfer her to the Second Shift Sergeant position because she was disabled. The ADA and TDA protect disabled employees and job applicants from discriminatory treatment. *See* 42 U.S.C. § 12112(a). A claim brought under the TDA is analyzed under the same principles as those utilized for the ADA. *Cardenas-Meade v. Pfizer,*

*Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013) (noting that the TDA does not require that employers make reasonable accommodations for employees).[6]

### A. Standard

Under the ADA, no covered entity shall discriminate against a qualified individual with a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. *Id.* Discrimination under the ADA includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the covered entity." *Id.* at § 12112(b)(5)(A); *see Kleiber*, 485 F.3d at 868. Where, as here, the plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, the Sixth Circuit requires the plaintiff to establish a *prima facie* case, followed by the familiar *McDonnell Douglas* burden-shifting analysis. To establish a *prima facie* case under the ADA, Hensley must establish that "(1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011); *see also Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011). To be "otherwise

---

[6] Because Hensley does not assert a failure to accommodate claim under the ADA, the court need not detail the contrasting analyses of the TDA and ADA with respect to "failure to accommodate" claims. *See Kleiber v. Honda of Amer. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007); *Bennett*, 315 S.W.3d at 841-42.

qualified" for the job, the employee bears the burden of showing she can perform the "essential functions" of the job. *Johnson*, 443 F. App'x at 983.

**B. The Plaintiff's Disability Discrimination Claim**

1. <u>It Is Undisputed That the Plaintiff Did Not Suffer an Adverse Employment Action</u>

The plaintiff asserts in her Response that the defendant discriminated against her on the basis of her disability when it refused to transfer her into the Second Shift Sergeant position from her Administrative Sergeant role upon her request in October 2012. Although she fails to specifically address the "adverse action" element of her *prima facie* case, she appears to argue that the defendant's failure to grant her this transfer constitutes an "adverse" employment action. The court disagrees.

An "adverse employment action has been defined as 'a materially adverse change in the terms and conditions of [a plaintiff's] employment.'" *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (*en banc*)). "A 'materially adverse' change in the terms and conditions of employment is typically characterized 'by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999).

The Sixth Circuit has held that, in ADA cases, a transfer or reassignment of duties does not constitute a materially adverse employment action, where a plaintiff enjoys the same (or a greater) rate of pay and benefits and has not suffered a loss in prestige because of her working conditions or title change. *See, e.g.*, *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886-887 (6th Cir. 1996) ("We agree with those courts who have required such a plaintiff to demonstrate as

14

part of a *prima facie* case a showing of materially adverse conditions imposed by the employer."); *see also Momah*, 239 F. App'x at 123 (holding that plaintiff failed to demonstrate a *prima facie* case of discrimination under Title VII because, "under this definition [of adverse employment action], it would appear that a purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purpose.")

Moreover, the Sixth Circuit has held that "an employee's subjective impressions as to the desirability of one position over another are not relevant in determining whether the employee suffered an adverse employment action." *Momah*, 239 F. App'x at 123 (internal citations omitted); *see also Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002); *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 343 n.2 (6th Cir. 2001); *Reese v. State of Mich. Family Independent Agency*, 31 F. App'x 172, 174 (6th Cir. 2002). The Sixth Circuit employs "an objective test that considers whether the employment action at issue was 'objectively intolerable to a reasonable person.'" *Momah*, 239 F. App'x at 124 (quoting *Policastro*, 297 F.3d at 539). Accordingly, an employee's subjective preference for one position over another is insufficient to render the denial of a lateral transfer an "adverse employment action." *Momah*, 239 F. App'x at 124.

Hensley admits that she suffered no loss of pay, benefits, or title. Moreover, other than her deposition testimony, which demonstrates her subjective dissatisfaction with her administrative responsibilities, Hensley has submitted no evidence to support a conclusion that her assignment to the Administrative Sergeant role or the denial of her request to transfer to the

15

Second Shift Sergeant position constitutes a materially adverse employment action.[7]

Accordingly, the court concludes that Hensley has failed to present objective evidence from which a jury could conclude that the denial of her request to transfer to the Second Shift Sergeant role would be adverse to a reasonable person. For this reason, the court concludes that the plaintiff has failed to set forth a *prima facie* case of discrimination on the basis of her disability, and the defendant is entitled to summary judgment with respect to the plaintiff's ADA claim.

## IV.  FMLA

The plaintiff's Response to the defendant's Motion for Summary Judgment describes her FMLA claim as an "FMLA discrimination claim." As noted above, the FMLA does not protect individuals against "disability discrimination."

### A. The Statute, Generally

The FMLA provides that an eligible employee is entitled to up to twelve weeks of unpaid medical leave in a year in the event of "'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)); *see also Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The Sixth Circuit recognizes two theories for recovery under the FMLA: "the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2)." *Id.* Although the plaintiff's Complaint does not specify which theory of recovery her claim is based upon, she appears to argue in her Response to the pending motion that the County retaliated against her after she

---

[7] The transfer would also have been against her own physician's medical advice, as noted earlier.

requested (and was granted) FMLA leave in October 2012. Accordingly, the court will limit its analysis of the claim to the retaliation theory.

### A. Retaliation Claims under the FMLA

The FMLA makes it illegal for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA.]" 29 U.S.C. § 2615(a)(2).

In order to make out a *prima facie* case of retaliation, the plaintiff must show that: (1) she availed herself of a protected right under the FMLA, (2) she was adversely affected by an employment decision, and (3) there was a causal connection between the exercise of the right and the adverse employment decision. *Skrjanc v. Great Lakes Power Serv.*, 272 F.3d 309, 314 (6th Cir. 2001). As is the case with an FMLA interference claim, employers may not "use the taking of FMLA leave as a negative factor in employment actions." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).

Causation can be proved directly or inferentially. When, as here, causation is based on circumstantial evidence, courts use the three-step *McDonnell Douglas* analysis. *Donald*, 667 F.3d at 762.

### B. The Plaintiff's FMLA Claim

Despite admitting in response to the DSUF that her sole allegation with respect to the FMLA involves an alleged "insinuation" by Baskette that the plaintiff filled out her own FMLA paperwork, the plaintiff appears to restructure her argument in her Response to the pending motion as an FMLA retaliation claim based upon the County's refusal to transfer her into Sergeant Conquest's role. She argues that, "[i]n the months following her application for FML [*sic*] Henlsey [*sic*] was assigned more and more administrative duties and Defendant through its

17

employee Lynn Duke, incorrectly assumed that Plaintiff was not qualified to perform the essential functions of a shift sergeant job – e*ven as she continued to perform the essential functions of a shift sergeant job* by being on-call and assigned to run shifts." (Docket No. 24 at 17 (emphasis in original).) Without citation to the record, the plaintiff further contends that "Duke . . . decided Hensley was unable to work, without verifying her belief with Human Resources or Hensley's position." (*Id.*)

The plaintiff's FMLA claim, like her ADA and TDA claims, is unsupported by the undisputed facts in the record. The parties agree that Hensley engaged in protected activity because she requested and took intermittent FMLA leave. However, for the reasons discussed with respect to the plaintiff's disability discrimination claims, Hensley has failed to establish that her employer took an adverse employment action against her when it refused to transfer her into the Second Shift Sergeant Position. For these reasons, the court concludes that Hensley has failed to demonstrate that a genuine issue of material fact exists with respect to her FMLA retaliation claim.

## CONCLUSION

For these reasons, the defendant's Motion for Summary Judgment will be granted. The plaintiff's claims will be dismissed with prejudice.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge